EVE, Appellee,

v.

RUTLEDGE et al., Appellants.

[Cite as *Eve v. Rutledge* (1991), 73 Ohio App.3d 366.]

Court of Appeals of Ohio,
Union County.

No. 14-90-16.

Decided May 1, 1991.

*Hilliard & Drexel* and *Charles H. Lease,* for appellee Arthur James Eve III.

*R. Larry Schneider,* for appellants.

*Paula A. Dinapoli,* for Equitable Savings and Loan Association.

---

SHAW, Judge.

This is an appeal from a decision rendered in the Court of Common Pleas of Union County granting summary judgment in favor of plaintiff-appellee, Arthur J. Eve III, upon his complaint for mortgage foreclosure, with respect to real property owned by defendants-appellants, Ralph Rutledge and Avola Rutledge.

The record reflects that on November 2, 1984, appellee sold a business to appellants known as "International Bartender's Institute." The business is located at 5354 North High Street in Columbus, Ohio. The purchase price for the business was $36,000. Appellants executed and delivered to appellee a cognovit promissory note for the principal sum of $32,000. The promissory note was secured by a mortgage deed executed by appellants and delivered to appellee for certain property situated in Dover Township, Union County, Ohio.

In October 1987, appellants ceased to make payments in accordance with the terms of the promissory note. Appellee commenced the instant suit to foreclose on the mortgage deed. Appellants' answer and counterclaim alleged that (1) appellee breached the underlying contract, (2) the note and mortgage were the product of misrepresentations by appellee constituting fraud in the inducement, and (3) appellee did not comply with the provisions of the Business Opportunity Purchaser's Protection Act, R.C. 1334.01 *et seq.*

In a single assignment of error, appellants contend that the trial court erred in granting summary judgment in favor of appellee and dismissing the appellants' counterclaim.[1] In this regard, appellants maintain that genuine issues of material fact exist as to whether the transaction qualified as the sale of a business opportunity plan. Appellants also allege the existence of genuine issues of material fact pertaining to their claim of common-law fraud. For the reasons that follow, the judgment of the trial court is affirmed.

With respect to the business opportunity law, appellants contend that the sale of the institute qualified as the sale of a business opportunity plan and

---

1. Appellants apparently have no quarrel with the grant of summary judgment in favor of appellee as pertains to the issues raised by the complaint.

that appellee therefore was required to provide the written disclosure document prescribed by R.C. 1334.02 as follows:

"In connection with the sale or lease of a business opportunity plan, no seller or broker shall fail to provide to a prospective purchaser, at least ten business days prior to the execution of an agreement selling or leasing a business opportunity plan, a written disclosure document."

When a seller violates this provision, the purchaser has the right to rescind the transaction and may, if damaged, recover the greater of three times the amount of actual damages or $10,000, whichever is greater.[2]

There are two issues raised with respect to appellee's alleged noncompliance with R.C. 1334.02. The first issue is whether the transaction constituted the sale of a "business opportunity plan" as defined in R.C. 1334.01(D):

" 'Business opportunity plan' means an agreement in which a purchaser obtains the right to offer, sell, or distribute goods or services under all of the following conditions:

"(1) The goods or services are supplied by the seller, a third person with whom the purchaser is required or advised to do business by the seller, or an affiliated person;

"(2) The purchaser is required to make an initial payment greater than one hundred dollars, but less than fifty thousand dollars, to the seller or an affiliated person to begin or maintain the business opportunity plan;

"(3) The seller makes any of the following representations:

"(a) That the purchaser will be provided with retail outlets or accounts, or assistance in establishing retail outlets or accounts, for the sale or distribution of the goods or services;

"(b) That the purchaser will be provided locations, or assistance in finding locations, for vending machines, electronic games, rack displays, or any other equipment or display for use in the sale or distribution of the goods or services;

"(c) That the purchaser can earn a profit in excess of the initial payment;

"(d) That there is a market for the goods or services;

"(e) That there is a buy-back arrangement."

R.C. 1334.12(I) provides that the business opportunity law is inapplicable to:

"The sale of a business which for at least six months previous to the sale has:

---

2. R.C. 1334.09(A).

"(1) Been operated from a given specific location;

"(2) Been open for business to the general public;

"(3) Had all equipment and supplies necessary for operating the business located at the specific location."

The trial court concluded that the transaction in question was not the sale of a business opportunity plan because the criteria in R.C. 1334.01(D)(1) were not satisfied. The trial court further concluded that, in any event, the transaction was not governed by the provisions of R.C. 1334.01 *et seq.* because of the express exception contained in R.C. 1334.12(I).

■ Having reviewed the record, we are unable to conclude that genuine issues of material fact exist as to the applicability of business opportunity law. Specifically, we find that appellee's affidavit submitted in support of his motion for summary judgment expressly states that: "The International Bartending Institute of Columbus had all equipment and supplies necessary for operating the business located at 5354 N. High Street, Columbus, Ohio * * * since December, 1980." Appellee's affidavit is uncontroverted on this point. In fact, appellant Ralph Rutledge testified upon deposition that "the business had all the equipment and supplies necessary for operating the business * * * for six months previous to the sale * * *." Thus, we find that the transaction did not satisfy the criteria established by R.C. 1334.01(D)(1). The arrangement is therefore disqualified from consideration as the sale of a business opportunity plan.

■ Moreover, we further conclude that, in any event, the uncontroverted facts in this case demonstrate the exception set forth at R.C. 1334.12(I). Here again, we are directed to the deposition testimony of Rutledge wherein he testified that the business had been "taking students for classes and teaching the general public for six months prior to the sale * * *." Thus, we find that as to appellants' theory of rescission and recovery under the Business Opportunity Purchaser's Protection Act, summary judgment was appropriate. We turn now to a consideration of appellants' allegation that the underlying contract supporting the promissory note and mortgage was the product of appellee's fraud.

■ The facts with respect to appellants' allegation of fraud clearly fall within the holding of *Keller v. Citizens Discount Corp.* (1957), 104 Ohio App. 206, 208, 4 O.O.2d 364, 365, 144 N.E.2d 886, 887, that:

" '[T]he performance of an executory contract after knowledge of facts making it voidable on the ground of fraud in its procurement is a waiver of any right of action for damages for the fraud.' "

In the case before us, the purchase agreement was executed on October 17, 1984 and the promissory note was executed on November 2, 1984. Ralph Rutledge testified that he realized three weeks after the transaction was complete that the information provided by appellee in negotiating the sale was inaccurate, false and misleading. Nevertheless, despite his belief that he had been defrauded, Rutledge continued to make payments pursuant to the terms of the promissory note until October 1987.

In December 1987, Rutledge wrote a letter to appellee wherein he discussed the failure of Randall Rhodes, a subsequent purchaser of the institute, to pay Rutledge according to the terms of a purchase agreement between Rhodes and Rutledge. In the letter, Rutledge expressly stated to appellee that Rutledge was expected to receive $25,000 from Rhodes and that "[t]his money is due you [appellee]."

Upon consideration of the record, we find that even construing the evidence in a light most favorable to appellants, and assuming we thereby could conclude that genuine issues of fact remain as to whether the purchase agreement was initially the product of fraud, summary judgment would still be appropriate because other uncontroverted facts in the record unequivocally demonstrate appellants' waiver of any alleged fraud. For these reasons, appellants' single assignment of error is not well taken.

Finding no error as assigned or argued, the judgment of the trial court is affirmed.

*Judgment affirmed.*

THOMAS F. BRYANT, P.J., and EVANS, J., concur.